**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laurie A Cummings,<br><br>        Plaintiff,<br><br>v.<br><br>Louis DeJoy,<br><br>        Defendant. | No. CV-21-01727-PHX-JAT<br><br>**ORDER** |

In this action, Plaintiff Laurie A. Cummings sues her employer Louis DeJoy, the Postmaster General of the United States Postal Service ("USPS"), pursuant to § 504 of the Rehabilitation Act, found at 29 U.S.C. § 794 which incorporates the anti-discrimination and anti-retaliation standards from "title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment." 29 U.S.C. § 794(d). USPS granted Cummings' request to return to work with "light duty" restrictions after a surgery for an off-duty injury in July 2017. (Doc. 34 at 2). She was not provided with a full eight hours per day of light duty work over the course of August 18 to September 28, 2017. (*Id.*) Cummings claims USPS discriminated against her because of her disability in this period. Cummings seeks, among other things, back pay, front pay, pension and other lost benefits. USPS now moves for summary judgment arguing Cummings cannot establish the *prima facie* elements of her claim. (Doc. 34). The Motion is fully briefed. (*See* Docs. 34; 35; 38). The Court now rules.

## I. FACTUAL BACKGROUND

Cummings began working for USPS in the 1990s and worked her way to a job as a full-time letter carrier and member of the National Association of Letter Carriers ("NALC"), her job at the period in question in this case. (Doc. 34 at 2). She was assigned to the Phoenix Arcadia Station. (*Id.*) Cummings was diagnosed with cervical stenosis and myelopathy in 2009, but there is no evidence she ever sought accommodation from USPS for those conditions. (*Id.* at 3). On July 19, 2017, she submitted her doctor's certification for her to take leave pursuant to the Federal Medical Leave Act ("FMLA") to undergo and recover from an anterior discectomy and spinal fusion surgery to treat the aforementioned conditions. (*Id.*) As part of requesting leave, Cummings submitted a Certification of Health Care Provider for Employee's Serious Health Condition form listing her essential job functions as "case, carry, deliver, drive, walk, push, pull" (Doc. 34-1 at 33). The USPS approved Cummings' request for FMLA leave for July 26, 2017, to October 26, 2017. (Doc. 34 at 2).

Cummings did not use the entire amount of FMLA leave. (*Id.*) Instead, on August 9, 2017, she requested approval to return to work on "light duty" status. (*Id.*) "Light duty" and "limited duty" are terms defined in the collective bargaining agreement between the NALC and USPS. (*Id.*) "Light duty" applies to employees who were injured off-the-job, and "limited duty" applies to employees injured on-the-job. (*Id.*) Light duty workers are not guaranteed any hours and can work a maximum of forty hours per week. (*See* Doc. 34-1 at 115). Tom S., Cummings' supervisor, granted her request for temporary light duty status with the following medical restrictions: "intermittent lifting/carrying for up to two hours per day; intermittent walking for up to two hours per day; no driving; intermittent reaching above shoulder for up to four hours per day; zero kneeling; zero bending/stooping; zero twisting; intermittent pushing and pulling for up to two hours per day." (Doc. 34 at 3–4). The light duty form signed by Cummings and Tom S. states that her light duty assignment was to consist of the following: "casing + tie down route(s) as needed." (Doc. 34-1 at 40). She was to return to full duty on October 23, 2017. (*Id.* at 4).

Cummings began working on light duty status on August 14, 2017. (*Id.*) She worked full eight-hour days Monday through Thursday of that week. (*Id.*) Starting on Friday, her hours varied from 1.3 to eight hours with no hours on some days until September 28, 2017. (*Id.*) Cummings asserts that she resumed working eight-hour days on September 29, 2017, after Tom S. departed the Arcadia Station. (*Id.*) Cummings filed her complaint in this case on October 11, 2021, alleging Tom S. discriminated against her in violation of the Rehabilitation Act. (*See* Doc. 1).

## II.    LEGAL STANDARD

The Court must grant summary judgment as to "each claim or defense—or the part of each claim or defense—on which summary judgment is sought. . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its determination "might affect the outcome of the suit under the governing law," and a dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). To be entitled to summary judgment, the moving party must first identify the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). At that point, to avoid summary judgment the nonmoving party must then "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting former Fed. R. Civ. P. 56(e)). One situation in which summary judgment is warranted is when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. This is so because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323.

In considering a motion for summary judgment, however, a court must neither "weigh the evidence and determine the truth of the matter," nor "make any credibility

determinations." *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting and citing *Anderson*, 477 U.S at 249, 255). Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255 (citation omitted).

## III.   ANALYSIS

The Rehabilitation Act prohibits federal employers from discriminating against employees because of their disability. *See* 29 U.S.C. 794(a). The Rehabilitation Act specifically adopts the standards set out in the Americans with Disabilities Act of 1990 (codified at 42 U.S.C. § 12111 *et seq.*) to determine whether the Rehabilitation Act has been violated. *See* § 794(d). Section 12112(a) states "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." In order to establish a *prima facie* case of disability discrimination under the Rehabilitation Act, Cummings must establish that: (1) she is a qualified individual able to perform the essential functions of her job, either with or without reasonable accommodation; (2) she is disabled within the meaning of the act; and (3) USPS acted adversely against her solely because of her disability. *See* 29 U.S.C. § 794(a); *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

Cummings states that in order to survive a motion for summary judgment she must "either provide sufficient direct evidence of an employer's discriminatory intent or give rise to an inference of discrimination by satisfying the burden-shifting test from *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997)." (Doc 35 at 3). However, in *Cordova* the Ninth Circuit stated that the burden-shifting test from *McDonnell Douglas* only applies in the event that a plaintiff succeeds in establishing a *prima facie* case of discrimination. 124 F.3d at 1148 ("A plaintiff in a Title VII case must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a

legitimate, nondiscriminatory reason for its employment decision.") Thus, in order to survive summary judgment, Cummings must still establish a *prima facie* case of discrimination under the Rehabilitation Act.

      a.    **"Qualified Individual"**

USPS argues that it is entitled to summary judgment because Cummings has not made a sufficient showing that she is a "qualified individual" under the Rehabilitation Act. (Doc. 34 at 6-8). Whether a plaintiff is a qualified individual is itself a two-step inquiry: a court must first examine "whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the position," before considering "whether the individual can perform the essential functions of such position with or without a reasonable accommodation." *Bates v. United Parcel Servs.*, Inc., 511 F.3d 974, 990 (9th Cir. 2007) (cleaned up).

USPS does not argue that Cummings does not have the requisite skill, experience, education and other job-related requirements of her position as a letter carrier. Instead, it argues that she could not perform the essential functions of that position with or without accommodation. Thus, the Court finds that Cummings has satisfied the first prong of the qualified individual analysis requiring her to have the requisite skill, experience, education and other job-related requirements of the position.

      b.    **Essential Functions**

           i.    **Determining Essential Functions of a Letter Carrier**

The essential functions of a job are "the fundamental job duties of the employment position," but not "the marginal functions of the position." *Id.* at 989 (quoting 29 C.F.R. § 1630.2(n)(1)). Evidence of whether a given function is essential or fundamental rather than marginal includes "the employer's judgment as to what functions . . . are essential," and any "written description" prepared "before advertising or interviewing applicants for the job," 42 U.S.C. § 12111(8), as well as the "(iii) [t]he amount of time spent on the job performing the function; (iv) [t]he consequences of not requiring the incumbent to perform the function; (v) [t]he terms of a collective bargaining agreement; (vi) [t]he work

experience of past incumbents in the job; and/or (vii) [t]he current work experience of incumbents in similar jobs," 29 C.F.R. § 1630.2(n)(3)(iii)–(vii). Other types of evidence may be relevant, however, and the essential functions determination "must be made on a case by case basis" upon consideration of "all relevant evidence." 29 C.F.R. pt. 1630, app. § 1630.2(n); *see also Dean v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998) (en banc).

USPS offers the letter carrier job description, the FMLA certification, and the Code of Federal Regulations as evidence of the essential functions of Cummings' position. USPS's letter carrier position description describes the purpose of a letter carrier as "[d]eliver[ing] and collect[ing] mail on foot or by vehicle under varying road and weather conditions in a prescribed area." (Doc. 34 at 7 (quoting Doc. 34-1 at 75)). That document also states that letter carriers must be able to carry mail weighing up to thirty-five pounds and load and unload containers weighing up to seventy pounds. (Doc 34-1 at 75). Further, the FMLA Certification identified the essential job functions of a letter carrier as "case, carry, deliver, drive, walk, push, pull." (Doc. 34-1 at 33). Finally, USPS uses the Code of Federal Regulations to help define the essential duties of a letter carrier—the reason the position exists is to deliver the mail. 29 C.F.R. § 1630.2(n)(2).

Cummings agrees with USPS that a letter carrier's primary purpose is to deliver the mail. (Doc. 35 at 4). Cummings does not point out different essential functions than USPS or offer evidence to the contrary, and USPS has established Cummings' essential functions as a letter carrier. Thus, the Court finds that there is no dispute of fact as to the essential functions of a letter carrier. The Court adopts as essential functions those that are required to accomplish the primary objective of delivering the mail and listed in the job description for letter carriers: delivering and collecting mail by foot or by vehicle; carrying mail weighing up to 35 pounds; and loading and unloading containers of mail weighing up to 70 pounds. (Doc. 34-1 at 75).

### ii. Ability to Perform Essential Functions

To determine whether an employee "can perform the job's essential functions

without reasonable accommodation," the Court must consider whether she can do so with reasonable accommodation only if the first question is answered in the negative. *Dark v. Curry County*, 451 F.3d 1078, 1086 (9th Cir. 2006) (citing *Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1231 (9th Cir. 2003)).

USPS argues that Cummings could not perform many of the essential functions of a letter carrier when she returned to work after her surgery. USPS relies on Cummings' Medical Status Report, (Doc. 34-1 at 54), written by Cummings' doctor, as evidence of Cummings' restrictions in the operative period. USPS points out that while Cummings could case mail, she could "only intermittently lift and carry items for up to two hours per day." (Doc. 34 at 7). She could also only stand intermittently. (*Id.*) She could walk for no more than two hours a day. (*Id.*) She could not drive. (*Id.*) She could push and pull, but not for more than two hours per day. (*Id.*) Finally, she was completely prohibited from kneeling, bending, stooping, or twisting. (*Id.*) In her deposition, Cummings admitted that her restriction on lifting would prevent her from lifting heavy parcels. (Doc. 34-1 at 17). She also estimated that 30% of her day would involve getting out of a vehicle and walking to deliver mail, and her medical provider had restricted her to a maximum of two hours of walking a day. (*Id.* at 19).

Cummings does not take USPS's argument head on. Instead, she seems to argue that because she was able to perform *some* of the essential functions of a letter carrier, and she was given full eight-hour workdays before the operative period ended and after Tom S. left the Arcadia office, she was a "qualified individual" within the meaning of the Rehabilitation Act. (Doc. 35 at 4–5). She does not point to any authority deeming a person a qualified individual under the ADA or Rehabilitation Act if they can perform some of the essential functions of a position but not all. Nor has the Court found any authority to support this argument. The definition of a qualified individual is unambiguous: a plaintiff must be able to perform *all* the essential functions of the position with or without reasonable accommodation. *See* 42 U.S.C. § 12111(8).

Because Cummings could only walk for a maximum of two hours a day and could

not drive, she could not perform several essential functions of a letter carrier including "deliver[ing] and collect[ing] mail on foot or by vehicle." (Doc. 34-1 at 75). She also could not lift heavy objects and would not be able to meet the requirement of lifting seventy-pound containers of mail. Thus, she could not perform the essential functions of her position. She also has not identified any accommodations that would allow her to perform all of her essential functions as a letter carrier. The Court therefore finds that Cummings has failed to establish a *prima facie* case of discrimination under the Rehabilitation Act. Accordingly, the Court grants USPS's Motion for Summary Judgment.

At bottom, in her Response to USPS's Motion for Summary Judgment, Cummings argues that the collective bargaining agreement (and therefore the practice of USPS) is discriminatory because it differentiates among disabled workers. However, the collective bargaining agreement treats workers differently based on the *source* of their disability—whether it be on-the-job or off-the-job. If a worker is injured on the job, the federal government is required to pay that worker under the Federal Employees' Compensation Act ("FECA"). *See* 5 U.S.C. § 8101 *et seq.* Accordingly, employees on limited duty status receive compensation whether they work a full forty hours of work a week or not. As a government entity and recipient of public funds, the USPS has a duty to follow the law. Giving work to limited duty employees before light duty employees helps ensure no government funds are wasted in the operations of the USPS. If Tom S. were to give work to a light duty employee before a limited duty employee and a limited duty employee was sent home early, the government would pay twice for the work being accomplished. The USPS's policy of assigning work to limited duty status employees and not guaranteeing forty hours a week to light duty status employees is an economic decision, not a discriminatory one. The Court is not swayed by Cummings' arguments to the contrary.

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant USPS's Motion for Summary Judgment (Doc. 34) is GRANTED. The Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff accordingly.

Dated this 3rd day of November, 2023.

James A. Teilborg
Senior United States District Judge